IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 18-cv-00033-STV

DARLENE KRESS,

    Plaintiff,

v.

STEVE MNUCHIN, Secretary, U.S. Department of Treasury,

    Defendant.
_____

**ORDER**
_____

Magistrate Judge Scott T. Varholak

    This matter comes before the Court on Defendant's Motion for Summary Judgment (the "Motion") [#35]. The Motion is before the Court on the parties' consent to have a United States magistrate judge conduct all proceedings in this action and to order the entry of a final judgment. [##26, 27] This Court has carefully considered the Motion and related briefing, the entire case file, and the applicable case law, and has determined that oral argument would not materially assist in the disposition of the Motion. For the following reasons, the Motion is **GRANTED in part** and **DENIED in part**.

**I.    BACKGROUND**

    This case arises out of the decision of the United States Department of Treasury not to promote Plaintiff Darlene Kress to the position of Supervisory Internal Revenue

Agent Group Manager (the "Manager Position") within the Internal Revenue Service ("IRS"). [*See generally* #1] The undisputed facts are as follows.[1]

In late 2012, Plaintiff was employed by the IRS as a Revenue Agent Reviewer. [#41, SOF1; *see also* #1 at ¶ 7] At the time, Plaintiff was in her early sixties. [#41, SOF3] She had been employed with the IRS since 2003 and been supervised by John Joseph for three years. [*Id.* at SOF1; #36-13 at 6] Plaintiff had received an overall rating of "outstanding" on her 2011 Performance Appraisal. [#41, SOF5; #36-4 at 7]

In October 2012, the IRS posted an opening for the Manager Position. [#36-8] Plaintiff and Colleen Krause were among the applicants for the position.[2] [*See* #41, SOF2; *see also* #1 at ¶ 17; #17 at ¶17] At the time, Ms. Krause was approximately fifty-two years old and was also supervised by Mr. Joseph. [#41, SOF3, 16]

Mr. Joseph completed an Evaluation of Managerial Potential for Plaintiff and gave her an "outstanding" rating, the highest rating available. [#36-7 at 1] He further rated Plaintiff "ready now" in all four categories of managerial responsibility: leadership, customer satisfaction, employee satisfaction, and business results. [*Id.*] A different IRS

---

[1] The undisputed facts are drawn from the Separate Statement of Facts filed with Defendant's Motion for Summary Judgment (the "Statement of Facts") [#41]. The Court refers to the sequentially numbered facts set forth in the Statement of Facts as "SOF#." The Court periodically cites directly to the exhibits cited by the parties to provide additional context.

[2] Plaintiff maintains that Ms. Krause submitted an incomplete application package but fails to identify the alleged deficiencies and does not identify the questions Ms. Krause supposedly did not answer. [#38 at 9] Nor does the Court observe any obvious deficiency in Ms. Krause's application. [*See* #36-14] Plaintiff's responses to the Statement of Facts suggests that, perhaps, the application was deficient because it did not contain the most recent performance appraisal. [#41, SOF7] But, Plaintiff has failed to cite to evidence that: (1) the applicant needed to submit the most recent performance appraisal, or (2) that the performance appraisal included in Ms. Krause's application was not her most recent performance appraisal.

2

official, Adam You, completed an Evaluation of Managerial Potential for Ms. Krause. [*Id.* at 2] Mr. You gave Ms. Krause an "exceeded/exceeds fully successful" rating, the second highest rating available. [*Id.*] Mr. You further indicated that Ms. Krause was "ready now" for the leadership, customer satisfaction, and employee satisfaction responsibilities, but would be ready in one to two years for the business results responsibility. [*Id.*]

Sonny Nelson, the Group Manager of Technical Services for the Western Area, was asked to rank the technical competency for all six applicants for the Manager Position. [#1 at ¶ 16; #17 at ¶ 16] Mr. Nelson assigned Plaintiff a score of 94 points and assigned Ms. Krause a score of 72 points. [#1 at ¶ 17; #17 at ¶ 17; *see also* #36-11] Bridgette Dinkins with the IRS's Human Capital Office in Philadelphia also ranked the six applicants. [#1 at ¶ 18; #17 at ¶ 18] Ms. Dinkins rated Plaintiff "best qualified," Ms. Krause "highly qualified," and the other four applicants "qualified." [#36-12] An interview panel also interviewed the applicants. [#35-5 at 3] One of the interviewers stated that she believed Plaintiff would be successful in the Manager Position. [#36-15 at 2]

Mr. Joseph was the "selecting official" for the Manager Position. [#41, SOF4] Mr. Joseph stated that he reviewed the interviewers' notes but did not interview the applicants himself. [#35-5 at 4] Based upon his review of the interviewers' notes and the applicants' responses to the interviewers' questions, Mr. Joseph concluded that "[w]hile neither applicant vastly stood out over the other[,] [Ms. Krause] portrayed herself as more personal in managing group members as well as addressing situations outside of the normal operations of the group." [*Id.* at 5] And while Plaintiff "came across as a stronger technician," the "position [was] for a manager[,] not a technician." [*Id.*]

3

Mr. Joseph also stated that Ms. Krause's cover letter and application "described diverse experience related to accounting, human resources and administration." [*Id.*] He was also impressed by Ms. Krause's experience working as a tax compensation specialist, because in that role Ms. Krause needed to "take others['] work and produce a tax computation," thereby demonstrating managerial ability. [*Id.*] Moreover, Ms. Krause had previous experience as a manager and taught at a community college. [*Id.* at 6] As a result, Mr. Joseph decided to select Ms. Krause for the Manager Position. [#41, SOF4] Mr. Joseph's supervisor, Area Director Rodney Kobayashi, approved the selection and Ms. Krause was hired for the Manager Position. [*Id.*]

On December 13, 2012, Mr. Joseph informed Plaintiff that she had not been selected for the Manager Position. [*Id.* at SOF17] The next day, Plaintiff contacted an Equal Employment Opportunity ("EEO") Counselor. [*Id.* at SOF19] About a week later, Plaintiff informed Mr. Joseph that she had contacted an EEO counselor about her non-selection for the Manager Position. [#36-1 at 2] On January 9, 2013, an EEO Counselor contacted Mr. Joseph about Plaintiff's discrimination allegations. [#41, SOF20] Plaintiff filed an EEO Complaint on February 27, 2013, alleging age discrimination in the selection of the Manager Position. [#35-3]

Meanwhile, on December 18, 2012, Mr. Joseph completed a Performance Appraisal for Plaintiff. [#36-5] He gave her an overall score of 4.8 out of 5, and an "outstanding" overall rating. [*Id.*] Because of the Performance Appraisal, Plaintiff automatically became eligible for a Quality Step Increase ("QSI") award. [#41, SOF22-23] The QSI award includes an Award Certificate. [*Id.* at SOF43] Plaintiff could select from three types of awards: cash, time-off, or a quality step increase in pay. [*Id.* at SOF22]

4

On December 20, 2012, Plaintiff selected the time-off award, which Mr. Joseph had previously approved when he completed the Performance Appraisal. [#36-5 at 7; #36-19; #41, SOF24] Mr. Joseph testified that he transmitted the QSI award "to the next person." [#35-6 at 26-27 (25:17-26:5)]

On or about June 7, 2013, Plaintiff had still not received her QSI award and sent an electronic inquiry asking about the status of her award. [#36-29] Bettina Lewis, a payroll specialist, responded that Plaintiff had not made an election as to the form of the award that she was requesting. [#41, SOF26] Plaintiff then changed her election to request a cash award, rather than time-off. [*Id.* at SOF27] But, three months earlier, the IRS had cancelled cash awards in lieu of quality step increases in pay due to budgetary constraints. [*Id.* at SOF30] This cancellation of cash awards led to a class-action grievance filed by the National Treasury Employees Union ("NTEU"). [*Id.* at SOF31] The NTEU and the IRS eventually settled the dispute and on April 8, 2014, Plaintiff received a cash disbursement for her 2012 QSI award. [*Id.* at SOF31-34] According to Plaintiff, this cash payment was less than she would have received had a request for cash payment been initially submitted in December 2012. [#36-1 at 3]

Plaintiff initiated this action in January 2018 asserting two claims for relief: age discrimination, in violation of the Age Discrimination in Employment Act ("ADEA"), and retaliation for opposing a violation of the ADEA. [#1] Defendant argues that the undisputed facts demonstrate that the IRS did not intentionally discriminate against Plaintiff based on her age when she was not selected for the vacant Manager Position. [#35 at 5-9] With respect to the retaliation claim, Defendant argues that Plaintiff was not subject to a materially adverse employment action and, in any event, she has failed to

adduce admissible evidence to permit an inference that she was subject to retaliation. [*Id.* at 9-15] Plaintiff has responded to the Motion [#38], and Defendant has filed a reply [#42].

## II. STANDARD OF REVIEW

Summary judgment is appropriate only if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett,* 477 U.S. 317, 322 (1986); *Henderson v. Inter–Chem Coal Co.,* 41 F.3d 567, 569 (10th Cir. 1994). When the moving party does not bear the burden of persuasion at trial, the movant may satisfy its initial burden of making a prima facie demonstration of the absence of a genuine issue of material fact "simply by pointing out to the court a lack of evidence . . . on an essential element of the nonmovant's claim." *Adler v. Wal–Mart Stores, Inc.*, 144 F.3d 664, 670-71 (10th Cir.1998). If the movant carries this initial burden, the burden then shifts to the nonmovant "to go beyond the pleadings and set forth specific facts that would be admissible in evidence in the event of trial." *Id.* at 671 (quotation omitted).

"[A] 'judge's function' at summary judgment is not 'to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial.'" *Tolan v. Cotton*, 134 S. Ct. 1861, 1866 (2014) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986)). Whether there is a genuine dispute as to a material fact depends upon whether the evidence presents a sufficient disagreement to require submission to a jury. *See Anderson,* 477 U.S. at 248–49; *Stone v. Autoliv ASP, Inc.,* 210 F.3d 1132, 1136 (10th Cir. 2000); *Carey v. U.S. Postal Serv.,* 812 F.2d 621, 623 (10th Cir. 1987). A fact is "material" if it pertains to an element of a claim or defense; a factual

6

dispute is "genuine" if the evidence is so contradictory that if the matter went to trial, a reasonable party could return a verdict for either party. *Anderson,* 477 U.S. at 248. "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (*citing First Nat'l. Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253, 289 (1968)).

### III.     Analysis

Plaintiff asserts two claims for relief: age discrimination in violation of the ADEA and retaliation for opposing a violation of the ADEA. [#1] In the instant Motion, Defendant argues that the undisputed facts demonstrate that the IRS did not intentionally discriminate against Plaintiff based on her age when she was not selected for the Manager Position. [#35 at 5-9] Defendant also argues that Plaintiff's retaliation claim fails, because she was not subject to a materially adverse employment action and she has not presented admissible evidence demonstrating that she was subject to retaliation. [*Id.* at 9-15] The Court addresses each argument in turn.

### A. Age Discrimination (Claim One)

The ADEA makes it unlawful for an employer "to fail or refuse to hire or to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age." 29 U.S.C. § 623(a)(1). Under the ADEA, the plaintiff "has the ultimate burden of proving her employer intentionally discriminated against her." *Riser v. QEP Energy*, 776 F.3d 1191, 1199 (10th Cir. 2015). To succeed on an ADEA claim, a plaintiff must prove that age was the "but for" cause for the adverse employment action. *Jones*

*v. Okla. City Pub. Sch.*, 617 F.3d 1273, 1277 (10th Cir. 2010). Although age does not have to be the "sole motivating factor in the employment decision," the plaintiff must show that "age was the factor that made a difference." *Id.* (quotations omitted).

A plaintiff may establish intentional discrimination either by direct evidence or circumstantial evidence. *Riser*, 776 F.3d at 1199. "Where a plaintiff seeks to use circumstantial evidence to show discriminatory intent, the burden-shifting framework of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 [ ] (1973) applies." *Id.* at 1199-1200; *see also Jones*, 617 F.3d at 1278 (holding that the *McDonnell Douglas* framework continues to apply to ADEA claims). Here, in the absence of an explicit decision that Defendant refused to promote Plaintiff because of her age, Plaintiff must rely upon the *McDonnell Douglas* test. Under that framework, the burden begins with Plaintiff to show that she: (1) was within the protected age group when her employer failed to promote her; (2) applied for and was qualified for the position; (3) was not promoted despite her qualifications; and (4) a younger person was selected for the promotion. *Webster v. Shulkin*, 707 F. App'x 535, 538 (10th Cir. 2017).

The parties agree that Plaintiff has established a prima facie case of failure to promote based on her age—Plaintiff was in her early sixties at the time of the decision, applied for the Manager Position and was qualified for that position, but despite her qualifications she was not selected and Defendant instead promoted Ms. Krause, who was approximately ten years younger than Plaintiff. [#35 at 6; #38 at 4] The Court thus proceeds to the next step of the burden shifting framework. *See, e.g.*, *Jaramillo v. Colo. Judicial Dep't*, 427 F.3d 1303, 1307 n.1 (10th Cir. 2005) (noting the court would not

8

resolve the case on the adequacy of plaintiff's prima facie discrimination case because the parties agreed she had satisfied her burden).

Once the plaintiff has established a prima facie case, "the burden shifts to the defendant to articulate a legitimate, nondiscriminatory reason for its employment action." *Jones*, 349 F.3d at 1266; *see also Reeves v. Sanderson Plumbing Prods., Inc.* 530 U.S. 133, 142 (2000). "If the defendant is able to articulate a valid reason, the plaintiff can avoid summary judgment only if she is able to show that a genuine dispute of material fact exists as to whether the defendant's articulated reason was pretextual." *Perry v. Woodward*, 199 F.3d 1126, 1135 (10th Cir. 1999).

### 1. Defendant's Nondiscriminatory Reasons

Plaintiff asserts that Defendant has failed to meet his burden of production in offering a legitimate, nondiscriminatory reason for selecting Ms. Krause. [#38 at 4-6] Defendant's "burden to articulate a nondiscriminatory reason has been characterized as an exceedingly light one." *Anaeme v. Diagnostek, Inc.*, 164 F.3d 1275, 1279 (10th Cir. 1999) (quotation omitted). Defendant "need not persuade the court that [he] was actually motivated by the proffered reasons." *Id.* (quoting *Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 254 (1981)). Instead, "[i]t is sufficient if the defendant's evidence raises a genuine issue of fact as to whether [he] discriminated against the plaintiff." *Id.* (quoting *Burdine*, 450 U.S. at 254). In other words, Defendant "need only produce admissible evidence which would allow the trier of fact rationally to conclude that the employment decision had not been motivated by discriminatory animus," to satisfy his burden. *Burdine*, 450 U.S. at 257.

Here, Mr. Joseph has provided sworn testimony that he based his decision, in part, on his review of the interview notes. [#35-5 at 5] Mr. Joseph looked for experience and responses from the candidates to demonstrate which applicant would best manage individuals, with the ability to effectively communicate and see other individuals' perspectives. [*Id.* at 4] He stated that "[w]hile neither applicant vastly stood out over the other[,] [Ms. Krause] portrayed herself as more personal in managing group members as well as addressing situations outside of the normal operations of the group." [*Id.* at 5] And while Plaintiff "came across as a stronger technician," the "position [was] for a manager not a technician." [*Id.*; *see also* #41, DSOF9-10] Mr. Joseph also stated that he liked Ms. Krause's diverse experience, including her prior managerial experience and the fact that she taught at a community college. [*Id.* at 5-6]

Courts have repeatedly held that a candidate's superior communication and leadership skills are legitimate, non-discriminatory reasons for selecting such a candidate. *See, e.g.*, *Diaz v. Okla. Bureau of Narcotics & Dangerous Drugs Control*, No. CIV-14-0821-F, 2016 WL 9022584, at *2 (W.D. Okla. July 5, 2016) (finding candidate's "demonstrated leadership capabilities" was a legitimate, nondiscriminatory reason for selecting that candidate over plaintiff for a promotion). For example, in *Meredith v. Beech Aircraft Corp.*, the Tenth Circuit held that defendant's assertions that plaintiff was not promoted because she lacked the interpersonal, leadership, and communication skills necessary for the position were legitimate, non-discriminatory reasons for the decision. 18 F.3d 890, 894 (10th Cir. 1994); *see also Medina v. Harvey*, No. CIV 04-1236 LCS/KBM, 2005 WL 8163483, at *3 (D.N.M. Dec. 20, 2005) (finding defendant's claims that the preferred candidate "received the highest score on the specific job-related criteria

10

measured by the panel," and had "specific knowledge, management abilities, and communications skills," to be legitimate reasons for the hiring decision). Selecting a candidate with more robust managerial experience, or diverse experiences relevant to the position, are also legitimate, nondiscriminatory reasons for that decision. *See, e.g.*, *Gorny v. Salazar*, 413 F. App'x 103, 110 (10th Cir. 2011) (finding defendant's legitimate nondiscriminatory reasons for its decision were not pretextual where the selected candidate had diverse experiences relevant to the position and a higher educational degree); *Hall v. FlightSaftey Int'l, Inc.*, 106 F. Supp. 2d 1171, 1185 (D. Kan. 2000) (holding defendant had articulated nondiscriminatory reasons for the hiring decision, including the selected candidate's managerial experience).

At this stage of the *McDonnell-Douglas* analysis, Defendant need not persuade the Court that he had convincing, objective reasons for selecting Ms. Krause over Plaintiff. *See Burdine*, 450 U.S. at 257. Instead, Defendant's burden is satisfied by simply producing evidence that would allow the jury "rationally to conclude that the employment decision had not been motivated by discriminatory animus." *Id.* Defendant's proffered explanation here, that Ms. Krause was the superior manager based on her personal skills and experience, satisfies this burden of production. *See, e.g.*, *id.* at 259 ("The fact that a court may think that the employer misjudged the qualifications of the applicants does not in itself expose him to Title VII liability, although this may be probative of whether the employer's reasons are pretexts for discrimination."); *see also Romero v. City of Albuquerque*, No. CIV 01-0400 MCA/RLP, 2002 WL 35649618, at *3 (D.N.M. Oct. 30, 2002) (finding defendant had articulated legitimate, nondiscriminatory reasons for its hiring decision, but concluding there was a genuine issue of material fact whether the

11

hired individuals met the qualifications in the job description, and denying defendant's motion for summary judgment on the pretext prong).

### 2. Plaintiff's Evidence of Pretext

Because Defendant has articulated legitimate, nondiscriminatory reasons for not promoting Plaintiff, the burden shifts to Plaintiff to show a genuine dispute of material fact as to whether Defendant's articulated reasons were a pretext for discrimination. *See Perry*, 199 F.3d at 1135. Summary judgment must be entered for Defendant unless the evidence would allow a jury to find by a preponderance of the evidence that Plaintiff's age "actually motivated" Defendant's decision and had a "determinative influence on the outcome." *Martinez v. Abraham*, No. 03-662 WPJ/ACT, 2004 WL 7337530, at *3 (D.N.M. Nov. 12, 2004) (quoting *Reeves*, 530 U.S. at 141); *see also Martinez v. U.S. Dep't of Energy*, 170 F. App'x 517, 524 (10th Cir. 2006).

"The relevant inquiry is not whether defendants' proffered reasons are correct, but whether defendants 'honestly believed those reasons and acted in good faith upon those beliefs.'" *Cuenca v. Univ. of Kan.*, 265 F. Supp. 2d 1191, 1214 (D. Kan. 2003) (quoting *Bullington v. United Air Lines, Inc.*, 186 F.3d 1301, 1318 (10th Cir. 1999)), *aff'd*, 101 F. App'x 782 (10th Cir. 2004). Plaintiff may demonstrate pretext by presenting evidence of "such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could rationally find them unworthy of credence." *Bullington*, 186 F.3d at 1317 (quotations omitted), *overruled on other grounds by Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101 (2002).

Here, the Court finds that there is a genuine issue of material fact as to whether Defendant's decision to hire Ms. Krause over Plaintiff was pretext for age discrimination, for at least two reasons. First, a jury could reasonably conclude that Plaintiff was overwhelmingly more qualified than Ms. Krause. Second, a jury could find that Defendant ultimately relied on subjective criteria to select Ms. Krause over Plaintiff.

### a. Qualifications

"In failure to promote cases, an inference of pretext may be drawn 'where "the facts assure [the court] that the plaintiff is better qualified than the other candidates for the position."'" *Rydzeski v. Curian Capital, LLC*, No. 06-cv-01298-WDM-BN, 2008 WL 465299, at *7 (D. Colo. Feb. 14, 2008) (quoting *Santana v. City & County of Denver*, 488 F.3d 860, 965 (10th Cir.2007)). The Tenth Circuit has "cautioned that 'pretext cannot be shown simply by identifying minor differences between plaintiff's qualifications and those of successful applicants,' but only by demonstrating an 'overwhelming' merit disparity." *Santana*, 488 F.3d at 865 (quoting *Bullington*, 186 F.3d at 1319). The Court concludes that such an inference can be drawn here.

First, Plaintiff received better performance evaluations from her supervisors than Ms. Krause. Plaintiff received the highest "outstanding" performance ratings in 2010, 2011, and 2012. [##36-2; 36-4; 36-5] In 2011—the only year for which the parties provided Ms. Krause's performance evaluation—Ms. Krause received an overall performance evaluation of "fully successful." [#36-6] In both 2011 and 2012, Plaintiff received an overall Critical Job Element ("CJE") rating of 4.8 out of 5. [#36-4; #36-5; #41, SOF14] In 2011, Ms. Krause received a CJE rating of 3.4. [#36-6]

13

Second, Plaintiff received better scores in her Evaluation of Managerial Potential than did Ms. Krause. Mr. Joseph gave Plaintiff an "outstanding" rating, the highest rating available. [#36-7 at 1] In contrast, Mr. You gave Ms. Krause an "exceeded/exceeds fully successful" rating, the second highest rating available. [*Id.* at 2] Mr. Joseph rated Plaintiff "ready now" in all four categories of managerial responsibility. [*Id.* at 1] Mr. You indicated that Ms. Krause was "ready now" for the leadership, customer satisfaction, and employee satisfaction responsibilities, but would be ready in one to two years for the business results responsibility. [*Id.* at 2]

Finally, the independent reviewers all rated Plaintiff higher than Ms. Krause. In ranking the applicants for their technical competency, Mr. Nelson assigned Plaintiff a score of 94 points, and assigned Ms. Krause a score of 72 points. [#1 at ¶ 17; #17 at ¶ 17; *see also* #36-11] Similarly, Ms. Dinkins rated Plaintiff as the "best qualified" applicant. [#36-12 at 1]

Even though this record does not conclusively establish pretext, it prevents summary judgment. "Where different ultimate inferences may be drawn from the evidence presented by the parties, the case is not one for summary judgment." *Brown v. Parker-Hannifin Corp.*, 746 F.2d 1407, 1411 (10th Cir. 1984); *see also Hase v. Mo. Div. of Emp't Sec.*, 972 F.2d 893, 897 (8th Cir. 1992) (reversing grant of summary judgment on issue of pretext where plaintiff had higher examination and performance ranking, as well as more years of experience, than selected applicant); *Equal Employment Opportunity Comm'n v. Jetstream Ground Servs., Inc.*, 134 F. Supp. 3d 1298, 1320-21 (D. Colo. 2015) (finding "sufficient evidence from which a jury could credit either [defendant's] proffered, legitimate nondiscriminatory reason for [plaintiff's] layoff, or from

which it could conclude that she was selected because she regularly wore religious garments," and therefore concluding that summary judgment was precluded (emphasis omitted)).

### b. Subjective Criteria

A jury could also find that Defendant ultimately relied on subjective criteria to select Ms. Krause over Plaintiff, and thus could conclude that the hiring decision was pretextual. "[P]retext is typically inferred when 'the criteria on which the employers ultimately rely are entirely subjective in nature.'" *Martinez*, 170 F. App'x at 523 (emphasis omitted) (quoting *Green v. New Mexico*, 420 F.3d 1189, 1195 (10th Cir. 2005)). Though "the existence of subjective criteria alone is not considered evidence of pretext . . . the existence of other circumstantial evidence may provoke a stronger inference of discrimination in the context of subjective evaluation standards." *Riggs v. AirTran Airways, Inc.*, 497 F.3d 1108, 1120 (10th Cir. 2007).

For example, in *Romero v. City of Albuquerque*, though the employer offered legitimate, nondiscriminatory business reasons for not hiring the plaintiff, the court nevertheless concluded that a jury could find that the hiring decision was pretextual. 2002 WL 35649618, at *3. There, the hiring director testified that he made his decisions "upon the recommendations that were made to him and the brief interviews that he himself conducted." *Id.* at *2. But some candidates were selected for the positions even though they were not interviewed or recommended by the hiring panel. *Id.* Moreover, the hiring director admitted that he did not review the personnel files or resumes of the candidates, and instead "was primarily interested in the applicants' leadership abilities," rather than their experience in the technical aspects of the job. *Id.* The court determined that there

was a genuine issue of material fact as to whether the individuals hired met the qualifications in the job descriptions, and whether the decisionmaker had "substituted his own subjective hiring criteria in place of the more objective qualifications" referenced throughout the rest of the hiring process. *Id.* at *3; *see also Garrett v. Hewlett-Packard Co.*, 305 F.3d 1210, 1218 (10th Cir. 2002) (holding plaintiff satisfied his burden on the pretext prong because a jury could reasonably find that rankings used in the hiring process were based on opinion and wholly subjective).

Here too, Mr. Joseph relied heavily upon subjective criteria, including his review of the applicants' answers to interview questions found in other interviewers' notes, and his belief that Plaintiff was more of a "technician," whereas Ms. Krause had better manager and personal communication qualities. [#35-5 at 5] According to Plaintiff's affidavit, the interviewing panel rated each applicant "based upon answers to a given set of subjective questions," and the questions were solely subjective. [#35-7 at 1] Though subjective criteria alone do not suggest pretext, a reasonable jury could conclude that Mr. Joseph's heavy reliance on subjective criteria, combined with Plaintiff's qualifications as compared to Ms. Krause's, are evidence that Defendant's hiring decision was pretextual. *See Riggs*, 497 F.3d at 1120. Viewing the evidence in the light most favorable to Plaintiff, there is a genuine issue of material fact as to whether Defendant's decision to hire Ms. Krause over Plaintiff was pretext for age discrimination. *See Romero*, 2002 WL 35649618, at *4. Accordingly, Defendant's Motion for Summary Judgment [#35] is **DENIED** to the extent it seeks summary judgment on Plaintiff's ADEA claim.

## B. Retaliation Claim (Claim Two)

In addition to her age discrimination claim, Plaintiff brings an ADEA retaliation claim. [#1 at 6-9] Like Plaintiff's discrimination claim, the *McDonnell Douglas* framework applies to the retaliation claim. *Sorensen v. City of Aurora*, 984 F.2d 349, 353 (10th Cir. 1993); *see also Webster*, 707 F. App'x at 538. Therefore, Plaintiff must first establish a prima facie case of retaliation and show that: "(1) she was engaged in opposition to [ADEA] discrimination; (2) she was subject to an adverse employment action; and (3) a causal connection exists between the protected activity and the adverse employment action." *Jones*, 349 F.3d at 1269-70.

Plaintiff's retaliation claims rests on the allegation that Mr. Joseph refused to process Plaintiff's QSI award in retaliation for Plaintiff filing the EEO Complaint. [#38 at 10-16] Defendant does not dispute that Plaintiff's filing of the EEO Complaint constitutes protected activity. [#35 at 9] Instead, Defendant argues that: (1) Plaintiff was not subjected to an adverse employment action, and (2) even if she was, there was no causal connection between the protected activity and the adverse employment action. [*Id.* at 9-15] The Court agrees that Plaintiff has failed to establish both the second and third prong of her retaliation claim, though for slightly different reasons than those advanced by Defendant with respect to the second prong.

First, Plaintiff has failed to establish that she was subjected to a materially adverse employment action. In the retaliation context, a materially adverse employment action is one that "might have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006) (quotations omitted). Plaintiff argues that she was subjected to a materially adverse

17

employment action because her cash payment was delayed and, when finally distributed, was less than the amount it would have been had it been timely processed.[3] [#38 at 11-14]

Plaintiff's argument ignores the fact that she initially requested time-off as her QSI award. [#36-5 at 7; #36-19] It was not until June 2013, when Plaintiff had still not received her QSI award and corresponded with Ms. Lewis, the payroll specialist, that Plaintiff changed her election to request a cash award, rather than time-off. [#41, SOF26-27] But, three months earlier, due to budgetary constraints, the IRS had cancelled cash awards in lieu of quality step increases in pay. [*Id.* at SOF30]

Thus, had Plaintiff's initial QSI request gone through as requested, Plaintiff would have received time-off. There is no evidence suggesting that: (1) Plaintiff could not still have received that time-off in June 2013, when she learned that her request had not been processed, or (2) she had been denied time-off prior to June 2013 because her QSI award had not been timely processed. Simply put, the untimely payment (and potential diminishment) of the cash award was not the result of any delay in processing Plaintiff's QSI award. Rather, the delay and potential diminishment of the cash award was the

---

[3] In her Response, Plaintiff additionally states that she "lost her time-off selection, she never received her award certificate, and [she] received hundreds of dollars less more than a year later." [#38 at 11-12] She further states that "she suffered the humiliating loss of never even receiving her coveted award certificate." [*Id.* at 13] But, Plaintiff's declaration makes no mention of her never receiving the award certificate, nor the "humiliating loss" of not receiving such a certificate. [*See generally* #36-1] Nor does Plaintiff present any other evidence to support this assertion. Similarly, Plaintiff's declaration does not state that she was denied the time-off selection. [*See generally id.*] Rather, she states that in June 2013, she indicated a preference for the cash award. [*Id.* at 3]

result of Plaintiff not requesting a cash award until after the IRS cancelled cash awards. Thus, Plaintiff has failed to present evidence of an adverse employment action.

Second, even if Plaintiff could establish that the delay in receiving her QSI award was a materially adverse action, she has failed to present evidence from which a jury could conclude that there was a causal connection between her filing of the EEO Complaint and the delay in receiving the award. It is entirely unclear from the record why Plaintiff did not timely receive her QSI award. Ms. Lewis maintains that the award was delayed because Plaintiff had failed to make an election as to the form of the award. [#41, SOF26] This appears inaccurate as Plaintiff apparently elected time-off in December 2012, which Mr. Joseph approved along with the award.[4] [#36-19] Mr. Joseph testified that he then transmitted the QSI award to the next person [#35-6 at 26-27 (25:17-26:5)], and Plaintiff has failed to present any evidence to rebut that testimony. Plaintiff has simply failed to present evidence from which a reasonable jury could conclude that Mr. Joseph caused the award to be delayed, as opposed to the award being delayed due to a bureaucratic snafu.[5] Accordingly, Defendant's Motion for Summary Judgment [#35] is **GRANTED** on Plaintiff's retaliation claim.

---

[4] Regardless, Plaintiff's response focuses on Mr. Joseph and asserts that it was Mr. Joseph who retaliated against Plaintiff. [#38 at 14-16] Plaintiff does not allege that Ms. Lewis was even aware of the EEO Complaint, let alone that Ms. Lewis retaliated against Plaintiff because of the EEO Complaint.

[5] Plaintiff points to the testimony of three other employees who signed their QSI appraisal and received an award. [#41, SOF23] But none of these employees describes the process by which the signed appraisal gets processed and the QSI award distributed. [#36-25 at 3 (8:7-10) (John Herring stating, in response to a question about what happened after he signed the appraisal: "I have no idea. That's a managerial function, not my function."); #36-26 at 3 (12:15-21) (Festus Thomas stating that he could not remember whether there were other steps that he needed to take to process his QSI award besides giving the appraisal to his manager); *id.* at 7 (27:1-19) (Mr. Thomas stating that he could not recall whether he had to go into a computer program to request the QSI

## IV. CONCLUSION

For the foregoing reasons, Defendant's Motion for Summary Judgment [#35] is **GRANTED in part** and **DENIED in part**. The Motion is **DENIED** to the extent it seeks summary judgment on Plaintiff's ADEA discrimination claim (Claim One). The Motion is **GRANTED** to the extent it seeks summary judgment on Plaintiff's ADEA retaliation claim (Claim Two) and summary judgment is entered in favor of Defendant on Plaintiff's Claim Two.

DATED: July 12, 2019

BY THE COURT:

s/Scott T. Varholak
United States Magistrate Judge

---

award); #36-27 at 2 (8:6-17) (Elizabeth Lambert stating that she did not know what her manager had to do to process the award once Ms. Lambert signed the evaluation)]. Indeed, two of the three employees specifically disavow any knowledge of how the award gets processed. [#36-25 at 3 (8:7-10) (Mr. Herring); #36-27 at 2 (8:6-12) (Ms. Lambert)]