# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLORADO

Civil Action No. 18-cv-00033-STV

DARLENE KRESS,

    Plaintiff,

v.

STEVEN MNUCHIN, SECRETARY, U.S. DEPARTMENT OF TREASURY,

    Defendant.

_____

## FINDINGS OF FACT, CONCLUSIONS OF LAW AND ORDER
_____

Magistrate Judge Scott T. Varholak

    This matter came before the Court for trial on January 27-28, 2020. The parties have consented to proceed before this Court for all proceedings, including the entry of final judgment, pursuant to 28 U.S.C. § 636(c) and D.C.COLO.LCivR 72.2. [##26, 27] At the conclusion of the trial, the Court took the matter under advisement. Having fully reviewed the evidence presented, applicable law and arguments of counsel, the Court now enters its Findings of Fact, Conclusions of Law and Order.

**I.    PROCEDURAL BACKGROUND**

    Plaintiff initiated the instant action on January 4, 2018. [#1] Plaintiff's Complaint asserts two causes of action related to Plaintiff's employment with the United States Department of Treasury ("Treasury") and Treasury's decision not to promote Plaintiff to the position of Supervisory Internal Revenue Agent Group Manager (the "Manager Position") within the Internal Revenue Service ("IRS"). [*See generally id.*] Specifically, Plaintiff asserted a claim for age discrimination, in violation of the Age Discrimination in

Employment Act ("ADEA"), and a claim for retaliation in violation of the ADEA. [*Id.*] On July 12, 2019, this Court granted in part and denied in part Defendant's Motion for Summary Judgment [#35]. [#47] The Court granted the Motion for Summary Judgment on Plaintiff's ADEA retaliation claim (Claim Two) and summary judgment was entered in favor of Defendant on that claim. [*See generally id.*] Claim One, age discrimination in violation of the ADEA, proceeded to trial. Plaintiff seeks lost wages, lost retirement benefits, and attorneys' fees and costs. [#1 at 10; #69 at 7]

On September 18, 2019, Defendant filed an Unopposed Motion to Amend Final Pretrial Order (ECF No. 45) and Trial Preparation Conference Order (ECF No. 46) to set this matter for a bench trial rather than a jury trial, because the United States has not waived sovereign immunity for a jury trial on an ADEA claim. [#51] The Court granted the Motion [#52], and a bench trial commenced on January 27, 2020, and concluded on January 28, 2020 [##80, 82]. At the conclusion of trial, the Court took the matter under advisement.

## II. FINDINGS OF FACT

Plaintiff began working with the IRS in 2003. In late 2009 or 2010, John Joseph selected Plaintiff for a short detail to work as a revenue agent in the Technical Services Division. Shortly after completing that detail, Plaintiff was selected by Mr. Joseph for a three-year assignment working as a Revenue Agent Reviewer in the Technical Services Division. During her time in Technical Services, Mr. Joseph was two levels ahead of Plaintiff and supervised her.

By all accounts, Plaintiff was an excellent employee. Between April 2009 and April 2013, Plaintiff received the Special Act or Service Award (2009), the Performance Award

(2009, 2011, 2012), the Time Off Award (2009, 2011), the Manager's Award (2011, 2012), and a quality step increase (2010). [Ex. 1] Plaintiff had received an overall rating of "outstanding" on her 2011 Performance Appraisal. Mr. Joseph was the Reviewing Official on Plaintiff's 2011 Performance Appraisal and agreed with the ratings. Mr. Joseph was also aware of most of Plaintiff's Performance Awards, Time Off Awards, and Manager's Awards.

In October 2012, the IRS posted an opening for the Manager Position. From early 2011 to May 2012, this position had been filled by Sharon Wamser. Mr. Joseph had hired Ms. Wamser. Mr. Joseph believes that Ms. Wamser was in her late fifties or early sixties at the time of the hire. In May 2012, Ms. Wamser left the position due to personal matters.

After Ms. Wamser left the Manager Position, both Plaintiff and Colleen Krause filled in as Acting Manager at different times. Ms. Krause was Acting Manager for approximately 120 days, during which period she had one or two union grievances filed against her.[1] Plaintiff was Acting Manager for sixty days[2] and did not have any grievances filed against her.

When the IRS posted the opening for the permanent Manager Position, Mr. Joseph notified Ms. Krause of the opportunity and encouraged her to apply. Mr. Joseph first learned that Plaintiff was going to apply for the Manager Position during a brief

---

[1] Ms. Krause testified that she did not believe that these grievances were filed during her time as Acting Manager, but Mr. Joseph testified that he was aware of at least one grievance filed against Ms. Krause when he was evaluating the applications. Given Mr. Joseph's testimony that he knew about the grievance at the time he reviewed Ms. Krause's application materials, the Court concludes that Ms. Krause is mistaken about the timing of the grievance(s) and that at least one grievance was filed against her during the time she was Acting Manager.

[2] Plaintiff also had some previous experience as Acting Manager for shorter periods of time.

3

conversation that he had with Plaintiff while both were exiting a light rail train. Plaintiff told Mr. Joseph that she was going to apply for the position. Mr. Joseph expressed some surprise, stating that he had heard a rumor that Plaintiff was going to retire.[3] Mr. Joseph also asked Plaintiff how long she planned to work. Mr. Joseph has never made any inappropriate comments to Plaintiff regarding age, and Plaintiff has never heard Mr. Joseph make any disparaging comments about Plaintiff's age. Despite expressing surprise about Plaintiff's application, Mr. Joseph said that it "was great" that Plaintiff was applying for the position and he encouraged her to apply.

Ms. Krause, Plaintiff, and four others applied for the Manager Position. At the time, Plaintiff was in her early sixties and Ms. Krause was in her early fifties. Plaintiff testified that her plan had been to work for six more years. The Court finds that testimony credible.

Mr. Joseph completed an Evaluation of Managerial Potential for Plaintiff and gave her an "outstanding" rating, the highest rating available. He further rated Plaintiff "ready now" in all four categories of managerial responsibility: leadership, customer satisfaction, employee satisfaction, and business results. A different IRS official, Adam You, completed an Evaluation of Managerial Potential for Ms. Krause. Mr. You gave Ms. Krause an "exceeded/exceeds fully successful" rating, the second highest rating available. Mr. You further indicated that Ms. Krause was "ready now" for the leadership, customer satisfaction, and employee satisfaction responsibilities, but would be ready in one to two years for the business results responsibility.

---

[3] Plaintiff testified that Mr. Joseph asked her when she would retire. Given the detailed description of the conversation provided by Mr. Joseph, the Court concludes that Mr. Joseph has a better recollection of the conversation and credits his version of events.

Sonny Nelson, the Group Manager of Technical Services for the Western Area, was asked to rank the technical competency of all applicants for the Manager Position. Mr. Nelson assigned Plaintiff a score of 94 points and assigned Ms. Krause a score of 72 points. Mr. Nelson's scores, the Evaluations of Managerial Potential, and the applications from all six applicants were sent to the IRS's Human Resources Office in Philadelphia.

The Evaluations of Managerial Potential and technical competency scores were sent to Bridgette Dinkins, who at the time was the Lead Human Resources Specialist. Ms. Dinkins then ranked the applicants. Ms. Dinkins rated Plaintiff "best qualified," Ms. Krause "highly qualified," and the other four applicants "qualified."

Mr. Joseph was the "selecting official" for the Manager Position, a position he had himself previously held. According to the IRS's Merit Promotion Program, candidates are referred to the selecting official in quality group order. Consistent with that program, on November 13, 2012, Ms. Dinkins sent Mr. Joseph an email stating that there was one best qualified applicant, one highly qualified applicant, and three qualified applicants.[4] [Ex. 9 at Bates No. 00267] Two days later, Ms. Dinkins sent Mr. Joseph another email containing a link identifying Plaintiff as the best qualified candidate and containing Plaintiff's application materials.

Ms. Dinkins also provided Mr. Joseph with Selection Guidance for the Manager Position, consistent with the IRS's Merit Promotion Program. In relevant part, the Selection Guidance provides as follows:

> The selecting official has the right to select or not select from among a group of appropriately certified candidates. Each quality group represents a quality level (i[.]e. Best Qualified, Highly Qualified, and Qualified).

---

[4] The reference to three (as opposed to four) qualified applicants appears to be a mistake. It has no impact on the Court's ultimate decision.

5

> Applicants must be considered in quality group order, with Best Qualified considered first. If there are 4 or more candidates remaining in the higher quality group and you decide to request the next lower quality group of candidates, your decision must be documented with a merit based reason.

[Ex. 9 at Bates No. 00271]

Though the Selection Guidance states that best qualified applicants should be considered first, Mr. Joseph could not recall whether he considered Plaintiff's application by itself. Instead, because there was only one candidate on the best qualified list, Mr. Joseph decided to ask for information about the candidate on the highly qualified list.[5] Mr. Joseph requested the highly qualified candidate in order to have a larger pool of applicants to choose from. On December 4, 2012, Ms. Dinkins sent Mr. Joseph the application package for Ms. Krause, the only candidate from the highly qualified list. [*See* Ex. F at Bates No. 00268] Neither Plaintiff nor Ms. Krause's application package contained the technical scores produced by Mr. Nelson, and Ms. Dinkins credibly testified that she did not provide those scores to Mr. Joseph.

As permitted by the Selection Guidance, Mr. Joseph selected a panel of three interviewers to interview Plaintiff and Ms. Krause. The interviewers asked each candidate ten questions. The questions were the same for each candidate. Mr. Joseph did not participate in the interviews or speak with the interviewers. Instead, he reviewed each of the interviewers' notes from the interviews.

Ultimately, Mr. Joseph selected Ms. Krause for the Manager Position on December 13, 2012. Mr. Joseph testified that he selected Ms. Krause because he believed that she was the person who would best fulfill what he was looking for in the Manager Position.

---

[5] Ms. Dinkins credibly testified that this was common practice for selecting officials when there was only one best qualified applicant.

Specifically, he was looking for someone who would work well with the employees in the Technical Services Division, who would oversee the employees but let them do their work, and who would help guide the employees. Mr. Joseph believed that Ms. Krause was the best person to fulfill that role and was ultimately the best person to manage the employees in the Technical Services Division. In contrast, Mr. Joseph believed that Plaintiff would put the process ahead of the person.

Mr. Joseph testified that he relied upon three items in concluding that Ms. Krause would be the best person for the Manager Position. First, he relied upon the interview notes. Mr. Joseph was asked about each of the ten interview questions and the candidates' answers to each question. He explained how, on several of the questions, Ms. Krause's answers focused on the employee and stressed an open-door policy. In contrast, Plaintiff's answers often focused on the work product and technical aspects of the job. The Court finds Mr. Joseph's testimony on this point credible.

Second, Mr. Joseph testified that he looked at the candidates' application packages. He noted that Plaintiff had been with the IRS longer than Ms. Krause. He also believed that Plaintiff had better technical knowledge than Ms. Krause, but that Ms. Krause nonetheless had a solid technical background. Both candidates had managerial experience, but Mr. Joseph believed that Ms. Krause had a wider variety of experiences that she could bring to the Manager Position.

Mr. Joseph testified that he noted the differences in the Evaluations of Managerial Potential. He testified that he was not concerned about the fact that Ms. Krause was rated ready in one to two years in the business results category because he believed that category to be focused more on the procedural side of the job, and that Ms. Krause would

learn that aspect of the job while in the Manager Position. He likewise testified that he was aware that Plaintiff's 2011 Performance Appraisal rated her as "outstanding," whereas Ms. Krause's Performance Appraisal rated her as "fully successful" in three categories and "exceeds fully successful" in two categories.[6] Mr. Joseph testified that he was not concerned about Ms. Krause's ratings because he was not her supervisor at the time. The Court finds Mr. Joseph's testimony on his analysis of the candidates' application packages credible.

Finally, Mr. Joseph testified that he relied upon his experience with Ms. Krause when Ms. Krause held the Acting Manager position. He testified that he saw Ms. Krause working with employees at their workstations and was impressed that she was working to get to know the employees and their programs. He also felt that she had a calming influence on the group. According to Mr. Joseph, due to other work demands, he did not have the opportunity to observe Plaintiff as closely when she held the Acting Manager position.

The Court finds this last explanation less credible. Mr. Joseph did not discuss Ms. Krause's time as Acting Manager as a reason for choosing her for the Manager Position in his statement to the Equal Employment Opportunity Commission ("EEOC") during the EEOC proceedings. Similarly, Defendant failed to identify Ms. Krause's performance as

---

[6] There was a great deal of discussion during the trial about whether Ms. Krause had submitted her most recent Performance Appraisal, thereby submitting a complete application. Ms. Krause had submitted a Performance Appraisal for the period from May 1, 2010, through April 30, 2011, even though a Performance Appraisal should have been completed for the period ending April 30, 2012. Ms. Krause testified about this discrepancy and explained that her Performance Appraisal for the period ending April 30, 2012 had been delayed, and thus the Performance Appraisal submitted with her application was her most recent appraisal. The Court finds Ms. Krause's testimony credible.

Acting Manager in its interrogatory response to a question asking Defendant to identify all the reasons for not selecting Plaintiff. When Mr. Joseph was asked about that response in his deposition, he said that response was correct and likewise did not add a statement about Ms. Krause's performance as Acting Manager. Finally, while Mr. Joseph stated that he did not have much of an opportunity to observe Plaintiff during her time as Acting Manager, he completed a performance review for Plaintiff that provided detailed praise for her performance as Acting Manager. [*See* Ex. 5]

After Mr. Joseph selected Ms. Krause for the position, he had a conversation with Plaintiff. He told Plaintiff that he based his decision on the applications, the interviews, the candidates' work experience, and the staffing needs of the organization. The Selection Guidance required counseling for any best qualified applicant that was not selected for the Manager Position. The Selection Guidance stated that there was "no specific or formal process established" for the counseling and that the "feedback could be a positive experience." [Ex. 9 at Bates No. 00271] Ms. Dinkins credibly testified that this counseling required an explanation about areas of improvement. Mr. Joseph testified that he did not recall whether he provided Plaintiff with counseling.

On December 18, 2012, Mr. Joseph completed Plaintiff's 2012 Performance Appraisal. Once again, he gave her an overall rating of "outstanding." With respect to her time as Acting Manager, Mr. Joseph noted that Plaintiff insured that deadlines were met and that she "offered the group a professional level of service." He also wrote about Plaintiff's time as Acting Manager:

> [I]t was clear, by watching the interactions with the group that you had their respect and developed positive working relationships while acting. With your years of experience and your responsive nature the employees felt comfortable approaching you for assistance and to discuss work issues.

9

> During your acting detail you were very responsive to requests that came in via emails. You were quick to forward information out of the group, set deadline[s], and respond. You handled most issues that arose. Your communication to the group was professional.
>
> . . .
>
> [Y]ou recognized employee[s'] strengths and capitalize[d] on those strengths. You also recognize[d] weaknesses and took actions to help the employee improve. Your positive, supportive attitude has fostered congenial workgroup relationships.

[Ex. 5 at 4]

In the beginning of 2013, Plaintiff's three-year assignment with the Technical Services Division ended. Though she had thought this position could be renewed, it was not renewed. She returned to her previous position within the IRS, which she found less challenging. As a result, on December 28, 2013, she retired from the IRS.

### III. CONCLUSIONS OF LAW

Claim One of Plaintiff's Complaint alleges age discrimination, in violation of the ADEA. [#1] Specifically, Plaintiff alleges that Defendant discriminated against her on the basis of her age by promoting Ms. Krause, who was approximately ten years younger than Plaintiff, for the Manager Position over Plaintiff. [*Id.*]

The ADEA makes it unlawful for an employer "to fail or refuse to hire or to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age." 29 U.S.C. § 623(a)(1). Under the ADEA, the plaintiff "has the ultimate burden of proving her employer intentionally discriminated against her." *Riser v. QEP Energy*, 776 F.3d 1191, 1199 (10th Cir. 2015). To succeed on an ADEA claim, a plaintiff must prove that age was the "but for" cause for the adverse employment action. *Jones*

*v. Okla. City Pub. Sch.*, 617 F.3d 1273, 1277 (10th Cir. 2010). Although age does not have to be the "sole motivating factor in the employment decision," the plaintiff must show that "age was the factor that made a difference." *Id.* (quotations omitted).

A plaintiff may establish intentional discrimination either by direct evidence or circumstantial evidence. *Riser*, 776 F.3d at 1199. "Where a plaintiff seeks to use circumstantial evidence to show discriminatory intent, the burden-shifting framework of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 [ ] (1973) applies." *Id.* at 1199-1200; *see also Jones*, 617 F.3d at 1278 (holding that the *McDonnell Douglas* framework continues to apply to ADEA claims). Here, in the absence of an explicit decision that Defendant refused to promote Plaintiff because of her age, Plaintiff must rely upon the *McDonnell Douglas* test. Under that framework, the burden begins with Plaintiff to show that she: (1) was within the protected age group when her employer failed to promote her; (2) applied for and was qualified for the position; (3) was not promoted despite her qualifications; and (4) a younger person was selected for the promotion. *Webster v. Shulkin*, 707 F. App'x 535, 538 (10th Cir. 2017).

Plaintiff has established her prima facie case here. Plaintiff was in her early sixties at the time of the decision, applied for the Manager Position and was qualified for that position, but despite her qualifications she was not selected and Defendant instead promoted Ms. Krause, who was approximately ten years younger than Plaintiff.

Because Plaintiff has established her prima facie case, there is a presumption of discrimination, and "the burden shifts to the defendant to articulate a legitimate, nondiscriminatory reason for its employment action." *Jones*, 349 F.3d at 1266; *see also Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 142 (2000). At this stage,

Defendant "is required only to explain its actions against the plaintiff in terms that are not facially prohibited by Title VII." *Jones*, 349 F.3d at 1266 (quotation omitted).

Here, Mr. Joseph testified that he selected Ms. Krause because he believed that she would do a better job working with the employees in the Technical Services Division, that she who would oversee the employees but let them do their work, and that she would help guide the employees. Mr. Joseph stated that he based his decision, in part, on his review of the interview notes. He looked for experience and responses from the candidates to demonstrate which applicant would best manage individuals, with the ability to effectively communicate and see other individuals' perspectives. Mr. Joseph also stated that he liked Ms. Krause's diverse experience. And while Plaintiff came across as a stronger technician, the position was for a manager, not a technician. These are legitimate, nondiscriminatory reasons for the decision to promote Ms. Krause over Plaintiff. *See, e.g.*, *Gorny v. Salazar*, 413 F. App'x 103, 110 (10th Cir. 2011) (finding defendant's legitimate nondiscriminatory reasons for its decision were not pretextual where the selected candidate had diverse experiences relevant to the position and a higher educational degree); *Meredith v. Beech Aircraft Corp.*, 18 F.3d 890, 894 (10th Cir. 1994) (holding that defendant's assertions that plaintiff was not promoted because she lacked the interpersonal, leadership, and communication skills necessary for the position were legitimate, non-discriminatory reasons for the decision); *Diaz v. Okla. Bureau of Narcotics & Dangerous Drugs Control*, No. CIV-14-0821-F, 2016 WL 9022584, at *2 (W.D. Okla. July 5, 2016) (finding candidate's "demonstrated leadership capabilities" was a legitimate, nondiscriminatory reason for selecting that candidate over plaintiff for a promotion); *Hall v. FlightSaftey Int'l, Inc.*, 106 F. Supp. 2d 1171, 1185 (D. Kan. 2000)

(holding defendant had articulated nondiscriminatory reasons for the hiring decision, including the selected candidate's managerial experience).

Because Defendant demonstrated valid, non-discriminatory reasons for not promoting Plaintiff, the burden shifts back to Plaintiff to show that Defendant's articulated reasons were a pretext for discrimination. *See Perry*, 199 F.3d at 1135. To find for Plaintiff, the Court as factfinder would need to find by a preponderance of the evidence that Plaintiff's age "actually motivated" Defendant's decision and had a "determinative influence on the outcome." *Martinez v. Abraham*, No. 03-662 WPJ/ACT, 2004 WL 7337530, at *3 (D.N.M. Nov. 12, 2004) (second quoting *Reeves*, 530 U.S. at 141); *see also Martinez v. U.S. Dep't of Energy*, 170 F. App'x 517, 524 (10th Cir. 2006).

"The relevant inquiry is not whether defendants' proffered reasons are correct, but whether defendants 'honestly believed those reasons and acted in good faith upon those beliefs.'" *Cuenca v. Univ. of Kan.*, 265 F. Supp. 2d 1191, 1214 (D. Kan. 2003) (quoting *Bullington v. United Air Lines, Inc.*, 186 F.3d 1301, 1318 (10th Cir. 1999)), *aff'd*, 101 F. App'x 782 (10th Cir. 2004). "[I]n evaluating alleged pretext [the fact-finder] must consider the facts as they appeared to the decision-maker[]." *Bennett v. Windstream Commc'ns, Inc.*, 792 F.3d 1261, 1268 (10th Cir. 2005); *see also E.E.O.C. v. C.R. England, Inc.*, 644 F.3d 1028, 1044 (10th Cir. 2011) ("In determining whether the proffered reason for a decision was pretextual, we examine the facts as they appear *to the person making the decision.*" (quotation omitted)). The Court "do[es] not look to the plaintiff's subjective evaluation of the situation." *C.R. England*, 644 F.3d at 1044. Plaintiff may demonstrate pretext by presenting evidence of "such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its

action that a reasonable factfinder could rationally find them unworthy of credence." *Bullington*, 186 F.3d at 1317 (quotations omitted), *overruled on other grounds by Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101 (2002).

In support of her claim for pretext, Plaintiff points to Mr. Joseph's comment to Plaintiff as they were exiting the train, Plaintiff's overwhelming qualifications over Ms. Krause, Mr. Joseph's deviation from the protocol set forth in the Selection Guidance, and the recent addition of Mr. Joseph's explanation that he relied upon Ms. Krause's time as Acting Manager to select Ms. Krause. The Court addresses each theory in turn below.

**A. The Retirement Comment**

Plaintiff points to Mr. Joseph's comment to her about retirement during their brief conversation as they were exiting the train. The Tenth Circuit has made clear that "stray remarks, and isolated or ambiguous comments are too abstract . . . to support a finding of age discrimination." *Kirkpatrick v. Pfizer, Inc.*, 391 F. App'x 712, 720 (10th Cir. 2010) (alteration in original) (quotations omitted). Indeed, the Tenth Circuit has rejected finding an inference of discrimination under circumstances like those here—a supervisor asking an employee about her retirement plans. *Id.* (collecting cases). The Court finds the inference particularly inappropriate here, where during the same conversation Mr. Joseph noted a rumor of Plaintiff's retirement, Mr. Joseph also encouraged Plaintiff to apply for the position. Moreover, Plaintiff admitted she had never heard Mr. Joseph make any other inappropriate comments about someone's age. Thus, the Court concludes that Mr. Joseph's retirement comment does not support a finding of pretext.

### B. Qualifications

"In failure to promote cases, an inference of pretext may be drawn 'where "the facts assure [the court] that the plaintiff is better qualified than the other candidates for the position."'" *Rydzeski v. Curian Capital, LLC*, No. 06-cv-01298-WDM-BN, 2008 WL 465299, at *7 (D. Colo. Feb. 14, 2008) (quoting *Santana v. City & County of Denver*, 488 F.3d 860, 965 (10th Cir.2007)). The Tenth Circuit has "cautioned that 'pretext cannot be shown simply by identifying minor differences between plaintiff's qualifications and those of successful applicants,' but only by demonstrating an 'overwhelming' merit disparity." *Santana*, 488 F.3d at 865 (quoting *Bullington*, 186 F.3d at 1319). And once again, the Court must "consider the facts as they appeared to the decision-maker[]," in this case Mr. Joseph.[7] *Bennett*, 792 F.3d at 1268.

Here, Mr. Joseph was aware that Plaintiff had been rated best qualified. While Ms. Krause was not rated as highly as Plaintiff, she was still rated as highly qualified, one step below the best qualified rating. Plaintiff also had received a slightly higher score on her Managerial Potential Evaluation. But Mr. Joseph explained that he was not concerned about the fact that Ms. Krause was rated ready in one to two years in the business results category because he believed that category focused more on the procedural side of the job, and that Ms. Krause would learn that aspect of the job while in the Manager Position. Once again, the Court finds Mr. Joseph credible with respect to that testimony. Finally, Ms. Krause also had higher marks on her most recent Performance Appraisal. But Mr. Joseph testified that he was not concerned about Ms. Krause's ratings because he was

---

[7] As noted above, Mr. Nelson's technical proficiency ratings of the applicants for the Manager Position were not provided to Mr. Joseph. As a result, the Court does not consider the disparity in those scores.

15

not her supervisor at the time. Once again, the Court finds Mr. Joseph's testimony on that point credible.

Thus, there was evidence from which one could conclude that Plaintiff was a better candidate than Ms. Krause. But, this Court "must not sit as a super-personnel department that second-guesses the company's business decisions, with the benefit of twenty-twenty hindsight, when reviewing whether the employer's reasons were pretextual." *Tyler v. RE/MAX Mountain States*, 232 F.3d 808, 813-14 (10th Cir. 2000). Mr. Joseph testified that he found Ms. Krause's interview answers to be more consistent with the leadership that he believed necessary for the management role, and the Court finds Mr. Joseph credible on that point.[8] As a result, the Court, as factfinder, does not believe that Plaintiff's qualifications when compared with those of Ms. Krause demonstrate pretext.

### C. Mr. Joseph's Deviation from the Selection Guidance

Next, Plaintiff argues that Mr. Joseph deviated from the Selection Guidance and that such deviation demonstrates pretext. In making a determination of pretext, courts often look to "disturbing procedural irregularities" of company practice, including "deviations from normal company procedure." *Garrettt v. Hewlett-Packard Co.*, 305 F.3d

---

[8] The Court is cognizant of the fact that "pretext is typically inferred when 'the criteria on which the employers ultimately rely are entirely subjective in nature.'" *Martinez*, 170 F. App'x at 523 (emphasis omitted) (quoting *Green v. New Mexico*, 420 F.3d 1189, 1195 (10th Cir. 2005)). And, a hiring decision may be pretextual where the employer "substitute[s] his own subjective hiring criteria," such as leadership ability rather than experience in the technical aspects of the job, "in place of the more objective qualifications" referenced through the hiring process. *Romero v. City of Albuquerque*, No. CIV 01-0400 MCA/RLP, 2002 WL 35649618, at *3 (D.N.M. Oct. 30, 2002); *see also Garrett v. Hewlett-Packard Co.*, 305 F.3d 1210, 1218 (10th Cir. 2002) (holding plaintiff satisfied his burden on the pretext prong because a jury could reasonably find that rankings used in the hiring process were based on opinion and wholly subjective). Nonetheless, "the existence of subjective criteria alone is not considered evidence of pretext." *Riggs v. AirTran Airways, Inc.*, 497 F.3d 1108, 1120 (10th Cir. 2007).

1210, 1219-20 (10th Cir. 2002). Here, Mr. Joseph was certainly required by the Selection Guidance to first consider Plaintiff's application, as she was the best qualified. Mr. Joseph was provided Plaintiff's application first, but he could not recall whether he actually reviewed it first. While his failure to first review Plaintiff's application would be inconsistent with the Selection Guidance, the Court does not find that inconsistency to be the type of "disturbing procedural irregularit[y]" that would demonstrate pretext.[9] This is especially true given Mr. Joseph's explanation—that he wanted a bigger applicant pool—and Ms. Dinkins' testimony that it was common for selecting officials to request additional applicants when there was only one best qualified applicant.

Mr. Joseph also failed to follow the Selection Guidance when he did not counsel Plaintiff. But, that failure to counsel occurred after the decision was already made and was not a deviation from the hiring process. Moreover, Mr. Joseph did speak to Plaintiff about his decision, and the Selection Guidance stated that there was "no specific or formal process" for counseling. [Ex. 9 at Bates No. 00271] Accordingly, the Court finds Mr. Joseph's minor deviations from the Selection Guidance do not establish pretext.

**D. Inconsistent Explanations**

Finally, Plaintiff points to Mr. Joseph's explanation that he relied upon Ms. Krause's time as Acting Manager to select Ms. Krause as evidence of pretext. Inconsistencies in an employer's proffered reasons for failure to promote can cause a factfinder to conclude that the proffered reasons were pretext for discrimination. *Bullington*, 186 F.3d at 1317, 1318 n.15; *see also Whittington v. Nordam Grp. Inc.*, 429 F.3d 986, 994 (10th Cir. 2005)

---

[9] Notably, the Selection Guidance does not provide any guidance as to how to weigh best qualified applicants against highly qualified applicants once both sets of applicants are considered.

17

(holding jury could find pretext where employer's asserted rationales for the termination were later affirmatively disclaimed "in the face of contrary testimony from its own management"). And, as set forth above, the Court questions the credibility of both Mr. Joseph's recent reliance upon his observations of Ms. Krause as Acting Manager to support his decision, and Mr. Joseph's purported limited observance of Plaintiff in the Acting Manager role.

Nonetheless, the Supreme Court has made clear that "[t]he ultimate question is whether the employer intentionally discriminated." *Reeves*, 530 U.S. at 146. The fact that "the employer's proffered reason is unpersuasive, or even obviously contrived, does not necessarily establish that the plaintiff's proffered reason . . . is correct." *Id.* at 146-47 (alteration in original) (quotation omitted). "In other words, [i]t is not enough to *dis*believe the employer; the factfinder must *believe* the plaintiff's explanation of intentional discrimination." *Id.* at 146 (alterations in original) (quotation omitted).

Here, the Court does not believe that Mr. Joseph chose Ms. Krause over Plaintiff because of Plaintiff's age. Rather, the Court credits Mr. Joseph's other testimony that he believed that Ms. Krause would make the better manager because she would do a better job working with the employees in the Technical Services Division, that she would oversee the employees but let them do their work, and that she would help guide the employees. This conclusion is buttressed by the fact that Mr. Joseph had hired Ms. Wamser for the Manager Position at a time when Mr. Joseph believed Ms. Wamser was in her late fifties or sixties. *See, e.g.*, *Abrams v. Lightolier Inc.*, 50 F.3d 1204, 1214-15 (3d Cir. 1995) (holding that "evidence as to [a supervisor's] attitude toward other older employees and the manner in which he treated them" was relevant to whether supervisor

"harbored a discriminatory attitude against older workers, and if credited, that evidence made the existence of an improper motive for the . . . decision more probable"). *Cf. McDonnell Douglas*, 411 U.S. at 804 (stating that evidence that employees of another race were treated differently from the plaintiff under comparable circumstances is "[e]specially relevant" to whether employer's proffered explanation is pretextual). Thus, because the Court ultimately concludes that Mr. Joseph hired Ms. Krause over Plaintiff for reasons unrelated to Plaintiff's age, the Court finds that Plaintiff has failed to establish her ADEA discrimination claim. The Court will therefore enter judgment in favor of Defendant on Claim One.

IV. **CONCLUSION**

Based on the foregoing, the Court finds in favor of **Defendant** on Claim One. Accordingly, it is **ORDERED** that the Clerk of Court shall enter judgment in favor of **Defendant** and against **Plaintiff**.

DATED: February 4, 2020								BY THE COURT:

									s/Scott T. Varholak
									United States Magistrate Judge